**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---------------------------------------------------------X
NAKUL KARKARE, M.D., ATTORNEY-
IN FACT FOR PATIENT JN

                Plaintiff.

            v.

INTERNATIONAL ASSOCIATION OF
BRIDGE, STRUCTURAL, ORNAMENTAL,
& REINFORCING IRON WORKERS LOCAL
580,

                Defendant.

_____X

Case No.

## COMPLAINT

By way of this Complaint, Plaintiff Nakul Karkare, M.D., Attorney-in-Fact on Behalf of Patient JN ("Plaintiff") brings this action against the International Association of Bridge, Structural, Ornamental & Reinforcing Iron Workers Local 580 ("Defendant") on behalf of the Patient.

1. This is an action under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), and its governing regulations, concerning Defendant's under-reimbursement of AA Medical, P.C.'s ("AA Medical") specialized orthopedic surgery for which the Patient remains financially responsible.

2. Defendant's plan is a self-funded plan, under which the patient of Plaintiff's professional practice group, AA Medical, was a plan beneficiary. The plan is the Local 580 Insurance Fund, offered to participants and beneficiaries of Defendant.

3. AA Medical was an out-of-network provider at all times relevant to this action, meaning that its surgeon did not participate in Defendant's network.

4. The Patient was seen by surgeon Vedant Vaksha, M.D., affiliated with AA Medical, at CitiMed in Jamaica, New York on March 29, 2022. The Patient was diagnosed with a medial meniscus root tear of the right knee. Dr. Vaksha performed a right knee arthroscopic medial meniscus root repair using Arthrex meniscus root repair kit and Swive Lock; right knee arthroscopic chondroplasty of the PF joint; right knee arthroscopic microfracture chondroplasty of the intercondylar notch to augment meniscus healing; and a cortisone injection under anesthesia.

5. After the procedure, AA Medical submitted an invoice in the form of a CMS-1500 form to Defendant's claims administrator as required for a total amount of $153,579.94. Defendant paid only $1,095.92, which was sent directly to the Patient, leaving an unreimbursed amount of $152,484.02, which is the responsibility of the Patient.

## JURISDICTION

6. The Court has subject matter jurisdiction over Plaintiff's ERISA claim under 28 U.S.C. § 1331 (federal question jurisdiction).

7. The Court has personal jurisdiction over the parties because Plaintiff submits to the jurisdiction of this Court, and Defendant systematically and continuously conducts business in the State of New York, and otherwise has minimum contacts with the State of New York, and with respect to ERISA the United States, sufficient to establish personal jurisdiction over it.

8. Venue is appropriately laid in this District under 28 U.S.C. § 1391 because Defendant conducts a substantial amount of business in the Eastern District of New York, including insuring individuals in the State (including the Patient) by providing its group healthcare plan to those employees who are plan participants and beneficiaries of its Plan.

9. Venue is also appropriate under 29 U.S.C. § 1132(e)(2), which requires that an ERISA plan participant has the right to bring suit where he or she resides or alleges that the violation of ERISA occurred. Plaintiff alleges that Defendant violated ERISA within the Eastern District of New York.

## PARTIES

10. Nakul Karkare, M.D., Attorney-in-Fact on Behalf of Patient JN is a surgeon practicing with AA Medical. AA Medical's principal place of business is Stony Brook, New York.

11. Defendant is a self-funded union fund. Its principal place of business is 501 West 42nd Street, 2d floor, New York, NY 10036.

## FACTUAL ALLEGATIONS

12. The Patient was diagnosed with a medial meniscus root tear of the right knee.

13. The Patient was seen by Dr. Vaksha at CitiMed in Jamaica, New York on March 29, 2022. Dr. Vaksha performed a right knee arthroscopic medial meniscus root repair using Arthrex meniscus root repair kit and Swive Lock; right knee arthroscopic chondroplasty of the PF joint; right knee arthroscopic microfracture chondroplasty of the intercondylar notch to augment meniscus healing; and a cortisone injection under anesthesia.

14. After the procedure, AA Medical submitted an invoice in the form of a CMS-1500 form to Defendant's claims administrator as required for a total amount of $153,579.94. Defendant paid only $1,095.92 directly to the Patient, leaving an unreimbursed amount of $152,484.02, which is the responsibility of the Patient.

15. Defendant did not fully reimburse AA Medical the payments related to surgical services under the Plan.

16. The Plan bases reimbursement for out-of-network providers for surgical services as follows, based on the language of the Plan's Summary Plan Description ("SPD"): "Allowed Amount: The maximum allowed amount is based on an agreement between Empire [the claims administrator] and the provider, or if there is no agreement, then on the customary charge or the average market charge in your geographical area for a similar service."

17. Because AA Medical, P.C. was out-of-network with Defendant, there was no agreement with Empire.

18. Surgical services are a covered service under the Plan.

19. AA Medical exhausted its administrative remedies. It appealed the under-reimbursement to Defendant's claims administrator, Empire Blue Cross Blue Shield. Empire stated in response to the appeal that "This claim was paid at the maximum amount available."

20. AA Medical also attempted to appeal to Defendant. Defendant responded by refusing to accept the appeal, stating that appeals are performed by its claims administrator.

21. Alternatively, the appellate process was futile and Plaintiff was deemed to have exhausted Defendant's administrative remedies.

22. When Defendant under-reimbursed Plaintiff's claims, it did not do so pursuant to the rules promulgated under ERISA.

23. 29 C.F.R. § 2560.503-1(g) provides as follows:

**Manner and content of notification of benefit determination.**

(1) The plan administrator shall provide a claimant with written or electronic notification of any adverse benefit determination. Any electronic notification shall comply with the standards imposed by 29 CFR 2520 2520.104b-1(c)(1)(i), (iii), and (iv). The notification shall set forth, in a manner calculated to be understood by the claimant -

    (i) The specific reason or reasons for the adverse determination;

    (ii) Reference to the specific plan provisions on which the determination is based;

    (iii) A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary;

    (iv) A description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review;

    (v) In the case of an adverse benefit determination by a group health plan -

(A) If an internal rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination, either the specific rule, guideline, protocol, or other similar criterion; or a statement that such a rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination and that a copy of such rule, guideline, protocol, or other criterion will be provided free of charge to the claimant upon request.

  24.  Defendant did not provide the information required by 29 C.F.R. § 2560.503-1(g), in violation of ERISA and the rules promulgated thereunder.

  25.  Specifically, in its appeal response letter Defendant through its claims administrator failed to provide AA Medical with the specific plan provisions on which the determination was based; a description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary; a description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of ERISA following an adverse benefit determination on review; and the specific rule, guideline, protocol, or other similar criterion used and that it may be requested free of charge.

5

26. Deemed exhaustion is set out in 29 C.F.R. § 2560-503-1, which states:

"[I]n the case of the failure of a plan to establish or follow claims procedures consistent with the requirements of this section, a claimant shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies under section 502(a) of [ERISA] on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim."

27. Plaintiff received Power of Attorney from the Patient.

28. The Patient completed a NSA form.

## COUNT I

### CLAIM AGAINST DEFENDANT FOR UNPAID BENEFITS UNDER EMPLOYEE BENEFIT PLAN GOVERNED BY ERISA

29. Defendant is obligated to pay benefits to its Plan participants and beneficiaries in accordance with the terms of Defendant's Plan, and in accordance with ERISA.

30. Defendant violated its legal obligations under this ERISA-governed Plan when it under-reimbursed AA Medical. for the surgeries provided to the Patient by AA Medical, through its surgeon, in violation of the terms of the Plan and in violation of ERISA § 502(a)(l)(B), 29 U.S.C. § 1132(a)(l)(B).

31. AA Medical submitted an invoice for $153,579.94.

32. Defendant paid $1,095.92, leaving an unreimbursed amount of $152,484.02. Plaintiff seeks reimbursement related to the reimbursement amount under the Plan.

33. Plaintiff seeks unpaid benefits and statutory interest back to the dates AA Medical's claims were originally submitted to Defendant. It also seeks attorneys' fees, costs, prejudgment interest and other appropriate relief against Defendant.

**WHEREFORE**, Plaintiff demands judgment in its favor against Defendant as follows:

(a) Ordering Defendant to recalculate and issue unpaid benefits to Plaintiff;

(b) Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' fees under ERISA, and costs and expenses in amounts to be determined by the Court;

(c) Awarding prejudgment interest; and

(d) Granting such other and further relief as is just and proper.

Dated: October 6, 2022

/s/ Robert J. Axelrod
AXELROD LLP
1465 Fifth Avenue, No. 7D
New York, NY 10035
(646) 986-4444

*Attorney for Nakul Karkare, M.D.*
*Attorney-in-Fact on behalf of Patient JN*