**MANDATE**

# UNITED STATES COURT OF APPEALS
# FOR THE
# SECOND CIRCUIT

At a Stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 9th day of June, two thousand twenty-five.

Before:   Richard J. Sullivan,
          Beth Robinson,
          Maria Araújo Kahn,
                *Circuit Judges*.

---

Nakul Karkare, M.D., Attorney in Fact on Behalf of Patient JN,

       Plaintiff - Appellant,

v.

International Association of Bridge, Structural, Ornamental & Reinforcing Iron Workers Local 580,

       Defendant - Appellee.

**JUDGMENT**

Docket No. 22-2874

---

The appeal in the above captioned case from an order of the United States District Court for the Eastern District of New York was argued on the district court's record and the parties' briefs.

IT IS HEREBY ORDERED, ADJUDGED and DECREED that the judgment of the district court is AFFIRMED in part and VACATED in part, and the case is REMANDED for further proceedings consistent with this Court's opinion.

For the Court:
Catherine O'Hagan Wolfe,
Clerk of Court

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

MANDATE ISSUED ON 07/01/2025

# United States Court of Appeals
# For the Second Circuit

August Term 2022

Argued: June 9, 2023
Decided: June 9, 2025

No. 22-2874

NAKUL KARKARE, M.D., Attorney in Fact on behalf of Patient JN,

*Plaintiff-Appellant*,

*v.*

INTERNATIONAL ASSOCIATION OF BRIDGE, STRUCTURAL, ORNAMENTAL & REINFORCING IRON WORKERS LOCAL 580,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Eastern District of New York
No. 22-cv-5988, Gary R. Brown, *Judge*.

Before:   SULLIVAN, ROBINSON, and KAHN, *Circuit Judges*.

Nakul Karkare, a surgeon affiliated with AA Medical, P.C. ("AA

Medical") who holds a power of attorney on behalf of Patient JN, brought this action against the International Association of Bridge, Structural, Ornamental & Reinforcing Iron Workers Local 580 (the "Union"), seeking to recover unpaid benefits pursuant to section 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B).  According to Karkare, the Union failed to fully reimburse AA Medical for payments related to its provision of surgical services to Patient JN, a beneficiary under the Union's self-funded insurance plan (the "Local 580 Insurance Fund").  The district court (Brown, *J.*) dismissed the complaint *sua sponte* after concluding that a power of attorney, as distinct from an assignment of claim, did not permit Karkare to maintain his ERISA cause of action on behalf of Patient JN.

On appeal, we conclude that Karkare lacks standing under Article III of the United States Constitution to bring this cause of action because, notwithstanding the power of attorney, the allegations in the complaint indicate that Karkare is suing in his own name and not on behalf of Patient JN. Nevertheless, we remand the case to the district court to consider whether Patient JN should be permitted to be substituted into the action pursuant to Federal Rule of Civil Procedure 17.

AFFIRMED IN PART, VACATED IN PART, AND REMANDED.

> ROBERT J. AXELROD, Axelrod LLP, New York, NY, *for Plaintiff-Appellant*.
>
> THOMAS P. KEANE, Colleran O'Hara & Mills LLP, Woodbury, NY, *for Defendant-Appellee*.

RICHARD J. SULLIVAN, *Circuit Judge*:

Nakul Karkare, a surgeon affiliated with AA Medical, P.C. ("AA Medical") who holds a power of attorney on behalf of Patient JN, brought this action against the International Association of Bridge, Structural, Ornamental & Reinforcing Iron Workers Local 580 (the "Union"), seeking to recover unpaid

benefits pursuant to section 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B). According to Karkare, the Union failed to fully reimburse AA Medical for payments related to its provision of surgical services to Patient JN, a beneficiary under the Union's self-funded insurance plan (the "Local 580 Insurance Fund"). The district court (Brown, *J.*) dismissed the complaint *sua sponte* after concluding that a power of attorney, as distinct from an assignment of claim, did not permit Karkare to maintain his ERISA cause of action on behalf of Patient JN.

On appeal, we conclude that Karkare lacks standing under Article III of the United States Constitution to bring this cause of action because, notwithstanding the power of attorney, the allegations in the complaint indicate that Karkare is suing in his own name and not on behalf of Patient JN. Nevertheless, we remand the case to the district court to consider whether Patient JN should be permitted to be substituted into the action pursuant to Federal Rule of Civil Procedure 17.

## I. BACKGROUND

In 2022, Dr. Vedant Vaksha, a surgeon affiliated with AA Medical, performed surgery on Patient JN to repair a meniscus root tear in his right knee. At the time of the surgery, Patient JN was a plan beneficiary of the Local 580

3

Insurance Fund, under which AA Medical was an out-of-network provider. After Patient JN's surgery, AA Medical submitted an invoice to the Union's claims administrator, Empire Blue Cross Blue Shield ("Empire"), for a total amount of $153,579.94.  Of this, the Union paid only $1,095.92 pursuant to its plan's Summary Plan Description, which provided for reimbursement to out-of-network providers like AA Medical "based on . . . the customary charge or the average market charge in [the patient's] geographical area for a similar service."  App'x at 7.  AA Medical appealed the reimbursement to Empire, which responded that the claim had been "paid at the maximum amount available."  *Id.* (internal quotation marks omitted).

Karkare, also a surgeon practicing with AA Medical, obtained a power of attorney from Patient JN and brought the instant litigation, asserting that the Union violated its obligations under section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B), when it limited AA Medical's reimbursement for Patient JN's surgery to $1,095.92.[1]  The district court *sua sponte* ordered Karkare to show

---

[1] The Union argues that it is not a proper defendant for a section 502(a)(1)(B) claim, since it is neither the plan nor the plan's administrator, trustee, or sponsor. *See* Union Br. at 26–28 (citing, *inter alia*, *Leonelli v. Pennwalt Corp.*, 887 F.2d 1195, 1199 (2d Cir. 1989); *N.Y. State Psychiatric Ass'n, Inc. v. UnitedHealth Grp.*, 798 F.3d 125, 132 (2d Cir. 2015)).  Because this issue was not raised before the district court, and we conclude that a remand is appropriate for the reasons set forth below, we leave this argument for the district court to address in the first instance as necessary.

4

cause why, in light of the "requirement that a physician must demonstrate a valid assignment of a claim from a beneficiary to maintain a cause of action for unpaid benefits under ERISA, . . . th[e] matter should not be dismissed for failure to plausibly allege a valid assignment."  App'x at 2.  In response, Karkare did not submit proof of a valid assignment, but instead argued that no assignment was necessary because the power of attorney was sufficient to allow Karkare to maintain a cause of action under ERISA on behalf of Patient JN.[2]  The district court disagreed, dismissing the complaint and later denying Karkare's motion for reconsideration.  This appeal followed.[3]

## II. Discussion

On appeal, the parties dispute whether Karkare, as attorney-in-fact who purportedly received a power of attorney from a plan member, has "standing"

---

[2] Patient JN's insurance plan is not included in the record on appeal, and neither party's brief indicates whether the plan permitted or prohibited an assignment of claims.  At oral argument, the parties took contrary positions on this matter:  Counsel for Karkare conveyed his understanding that the plan contained an express "anti-assignment" provision, *see* Oral Arg. Tr. at 26:33–27:04, while counsel for the Union suggested that the plan contained no such provision, *see id.* at 15:11–32, 24:30–35.  The district court may resolve this dispute as necessary on remand.

[3] Although the district court did not enter judgment on a separate document as required by Federal Rule of Civil Procedure 58(a), the judgment became final 150 days after the order was entered on the docket, *see* Fed. R. Civ. P. 58(c)(2)(B), and we deem Karkare's notice of appeal to have been timely filed as of that date, *see* Fed. R. App. P. 4(a)(2); *see also* Fed. R. App. P. 4(a)(7)(B) ("A failure to set forth a judgment or order on a separate document when required by [Rule] 58(a) does not affect the validity of an appeal from that judgment or order.").

5

to bring an ERISA action under section 502(a) for unpaid medical fees, absent a valid assignment of the claim. To that end, Karkare and the Union primarily focus their attention on the concept formerly recognized as "statutory standing" under ERISA, which in reality "is not a standing issue [at all], but simply a question of whether the particular plaintiff 'has a cause of action under the statute.'" *Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 359 (2d Cir. 2016) (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 (2014)). Generally, "[s]ection 502 is narrowly construed to authorize only two categories of persons to sue directly to enforce their rights under the plan: participants and beneficiaries." *Rojas v. Cigna Health & Life Ins. Co.*, 793 F.3d 253, 256 (2d Cir. 2015); *see also* 29 U.S.C. § 1132(a)(1)(B). And while we have recognized a limited exception permitting "physicians to bring claims under [section] 502(a) based on a valid assignment from a patient," *Am. Psychiatric Ass'n*, 821 F.3d at 361, we have also concluded that ERISA-governed plans may preclude their beneficiaries from making such assignments, *see McCulloch Orthopaedic Surgical Servs., PLLC v. Aetna Inc.*, 857 F.3d 141, 147–48 (2d Cir. 2017). The Union contends that Karkare is attempting an end run around these precedents by using a power of attorney to "expand ERISA [causes of action] to include individuals" like himself, who are neither plan participants nor

6

beneficiaries, and who do not possess a valid assignment of claim. Union Br. at 19.

Whether a party has a cause of action under a statute is distinct, of course, from the issue of "constitutional standing," which refers to the requirement that parties establish a "Case" or "Controversy" within the meaning of Article III of the United States Constitution. *See Am. Psychiatric Ass'n*, 821 F.3d at 358. To maintain an ERISA action, a plaintiff must satisfy both of these distinct requirements – that is, he must "assert a constitutionally sufficient injury arising from the breach of a statutorily imposed duty *and* identify a statutory endorsement of the action." *Id.* at 359 (internal quotation marks omitted).[4]

It is not entirely clear from the district court's one-paragraph docket order dismissing the complaint whether the district court concluded that Karkare lacked constitutional standing, a statutory right to bring a cause of action under

---

[4] As we have recognized, there is another set of "standing" considerations, known as "prudential standing," that "are judicially self-imposed limits on the exercise of federal jurisdiction" distinct from the requirements of Article III. *Am. Psychiatric Ass'n*, 821 F.3d at 358 (internal quotation marks omitted). One such prudential principle, for example, "is that a plaintiff may ordinarily assert only his own legal rights, not those of third parties." *Id.* We have explained, however, that such prudential considerations do not apply in these sorts of ERISA cases, where (1) Congress has created a cause of action for certain individuals, and (2) federal courts must determine whether particular plaintiffs have such causes of action. *See id.* at 359 ("Because Congress specified in the statute who may sue, prudential[-]standing principles do not apply."); *see also id.* at 360 ("In sum, *Lexmark* teaches that we cannot expand the congressionally created statutory list of those who may bring a cause of action by importing third-party prudential considerations.").

section 502(a), or both; the district court's order cites various cases that address the two concepts. *See* App'x at 2. In any event, we begin, as we must, with the threshold question of whether Karkare has standing under Article III to bring this case. *See Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009) ("[I]t is well established that the [C]ourt has an independent obligation to assure that [Article III] standing exists, regardless of whether it is challenged by any of the parties."); *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 198 (2d Cir. 2005) ("If plaintiffs lack Article III standing, a court has no subject[-]matter jurisdiction to hear their claim.").

**A.     Karkare's Constitutional Standing**

To establish constitutional standing under Article III, a plaintiff must establish (1) an "injury in fact," defined as "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent"; (2) a sufficient "causal connection between the injury and the conduct complained of"; and (3) a likelihood that "the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal quotation marks omitted). Generally, "the 'injury-in-fact' requirement means that a plaintiff must have personally suffered an injury." *W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 107 (2d Cir. 2008); *see Food & Drug*

8

*Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024) ("The injury . . . must be particularized; [it] must affect 'the plaintiff in a personal and individual way.'" (quoting *Lujan*, 504 U.S. at 560 n.1)). At the pleading stage, we "constru[e] the complaint in [the] plaintiff's favor and accept[] as true all material factual allegations contained therein," but we still require the plaintiff to "allege facts that affirmatively and plausibly suggest that [he] has standing to sue." *Conn. Parents Union v. Russell-Tucker*, 8 F.4th 167, 172 (2d Cir. 2021) (internal quotation marks omitted).

Karkare, as the named plaintiff, does not argue that he has suffered any direct injury as a result of the Union's alleged breach of Patient JN's plan. Nor can he, since the complaint alleges that another physician treated Patient JN on behalf of a corporate entity, AA Medical, that was the party entitled to the outstanding treatment fees. *See* App'x at 5 ("The Patient was seen by surgeon Vedant Vaksha, M.D., affiliated with AA Medical."); *id.* at 6 ("[The Union] did not fully reimburse AA Medical the payments related to surgical services under the Plan."). Whatever the precise legal contours of his affiliation with AA Medical – the complaint does not say – Karkare does not have standing to assert claims for any injuries suffered by that corporate entity, even if he was "personally aggrieved" by the Union's conduct and "may have faced the risk of

9

financial loss as a result." *Jones v. Niagara Frontier Transp. Auth.*, 836 F.2d 731, 736 (2d Cir. 1987) (explaining that, in a suit brought against a corporation's contractual counterparty, even a sole shareholder "does not have standing to assert claims alleging wrongs to the corporation").

Instead, Karkare's theory of constitutional standing appears to be that he is suing purely in a representative capacity on behalf of Patient JN – for injuries purportedly suffered by Patient JN – pursuant to a power of attorney. But because the complaint allegations indicate that Karkare is in fact suing in his own name and for his own benefit, we conclude that the power of attorney is of no moment, and he lacks constitutional standing to maintain this action.

Our precedent is clear that a power of attorney does not confer Article III standing on the attorney-in-fact to file suit in the attorney-in-fact's own name, even if the suit is purportedly brought on behalf of the grantor of the power-of-attorney. *See, e.g.*, *W.R. Huff*, 549 F.3d at 108; *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 17–18 (2d Cir. 1997). This is because "the minimum requirement for an injury-in-fact is that the plaintiff have legal title to, or a proprietary interest in, the claim." *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.a.r.l*, 790 F.3d 411, 420 (2d Cir. 2015) (internal quotation marks omitted). A power of attorney does not "transfer an ownership interest in [a]

10

claim," but instead only "authorizes the grantee to act as an agent or an attorney-in-fact for the grantor." *W.R. Huff*, 549 F.3d at 108.

This stands in contrast to an assignment of claims, which "transfers legal title or ownership of those claims and thus fulfills the constitutional requirement of an injury-in-fact." *Id.* (internal quotation marks omitted); *see Connecticut v. Physicians Health Servs. of Conn., Inc.*, 287 F.3d 110, 117 (2d Cir. 2002) ("[A] valid and binding assignment of a claim (or a portion thereof) – not only the right or ability to bring suit – may confer standing on the assignee." (emphasis omitted)). In short, a party "must plead a proprietary interest in [a] claim, and not simply the ability to pursue the claim on behalf of another, to bring the claim in his or her own name and satisfy the requirements of constitutional standing." *Cortlandt*, 790 F.3d at 420; *see Advanced Magnetics*, 106 F.3d at 17–18 (concluding that a purported assignment agreement was, in effect, the "grant of a power of attorney" and thus "insufficient to permit [the grantee] to sue on those claims in its name").

These cases and others foreclose Karkare's attempt to bring this action on his own behalf based on Patient JN's purported grant of a power of attorney. The complaint indicates that Karkare is suing in his own name, not that of Patient JN. Most obviously, the complaint identifies Karkare, not Patient JN, as

11

the named plaintiff in this action. *See, e.g.*, App'x at 4 (defining the "Plaintiff" as "Nakul Karkare, M.D., Attorney-In-Fact on Behalf of Patient JN"); *id.* at 9 (referring to Karkare as "Plaintiff"). The complaint goes on to refer to "Plaintiff" and AA Medical, the medical group with which Karkare practices, interchangeably. *Compare id.* at 6 ("Defendant did not fully reimburse AA Medical the payments related to surgical services under the Plan."), *and id.* at 7 ("AA Medical exhausted its administrative remedies."), *with id.* ("Defendant under-reimbursed Plaintiff's claims."), *and id.* ("Plaintiff was deemed to have exhausted Defendant's administrative remedies."). Patient JN, by contrast, is not identified as a party to the complaint but instead referred to only as "the Patient" throughout. *E.g., id.* at 6, 9.

And as for the relief being sought, the complaint seeks to recompense Karkare, not Patient JN, as the plaintiff. *See, e.g., id.* at 9 ("Plaintiff seeks unpaid benefits and statutory interest . . . . [He] also seeks attorneys' fees, costs, prejudgment interest and other appropriate relief against Defendant."); *id.* at 9–10 ("Plaintiff demands judgment in its favor . . . [o]rdering Defendant to recalculate and issue unpaid benefits to Plaintiff" and "[a]warding Plaintiff the costs and disbursements of this action.").

12

In short, upon reviewing the complaint, we are persuaded that Karkare brought this ERISA suit in his own name and for his own benefit (or that of AA Medical) – not Patient JN, the patient and party for whom he purports to act. Under our precedent, he lacks Article III standing to do so. *See Advanced Magnetics*, 106 F.3d at 18; *W.R. Huff*, 549 F.3d at 108; *see also Flynn v. Anthony Mion & Son, Inc.*, 112 F. App'x 101, 102 (2d Cir. 2004) (concluding that the trustees of a pension fund lacked standing to bring an ERISA action because the fund "at most . . . enjoy[ed] the power of attorney to bring claims on behalf of its affiliates as their agent" and could not "bring those claims in its own name"). Given Karkare's lack of Article III standing, the district court lacked subject-matter jurisdiction to adjudicate this dispute. Consequently, dismissal of the complaint, without prejudice, was warranted. *See Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 54–55 (2d Cir. 2016) ("[W]here a complaint is dismissed for lack of Article III standing, the dismissal must be without prejudice.").

## B.   Remand for Further Proceedings

Nevertheless, Karkare's lack of Article III standing does not necessarily render this action an "incurable nullity," *Fund Liquidation Holdings LLC v. Bank of Am. Corp.*, 991 F.3d 370, 386 (2d Cir. 2021), since, based on the complaint, it seems likely (if not a near certainty) that Patient JN has standing to maintain the

ERISA claim at issue here. Indeed, notwithstanding how the complaint was pleaded, Karkare maintains on appeal that he "does not seek to maintain the action in his own name, in his own right, [or] for his own benefit," but rather as an "action by the plan member," Patient JN. Karkare Br. at 6–7; *see also* App'x at 4 (identifying Karkare as "Attorney-in-Fact on Behalf of Patient JN"). We have held that "Article III is satisfied so long as a party with standing to prosecute the specific claim in question exists at the time the pleading is filed." *Fund Liquidation*, 991 F.3d at 386. And in such circumstances, we have permitted the substitution of the real party in interest – that is, "the party with the legal title to the claim asserted" and "with the stake in the controversy that is being used to invoke the court's jurisdiction" – pursuant to Federal Rule of Civil Procedure 17. *Id.* at 389; *see also* Fed. R. Civ. P. 17(a)(3) (providing that a "court may not dismiss an action for failure to prosecute in the name of the real party in interest" until after "a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action").

Therefore, given the facts of this case, we think it appropriate to remand the case to the district court to permit Patient JN to move to be substituted into the action or to otherwise submit an amended complaint that properly asserts

14

the ERISA claim on behalf of Patient JN.[5] *See Fund Liquidation*, 991 F.3d at 388–89 (distinguishing between "defective jurisdictional allegations," which can be cured through amended pleadings, and "defective jurisdiction itself," which cannot). Because Patient JN has not yet had the opportunity to do so, and the parties have not briefed this issue on appeal, we leave it to the district court to pass upon any request made pursuant to Rule 17 (and any other applicable Rules) in the first instance. We express no position on the basis for, or merits of, any such request.[6]

---

[5] In *Pressroom Unions-Printers League Income Security Fund v. Continental Assurance Co.*, we held that the district court lacked subject-matter jurisdiction over an ERISA cause of action brought by a pension fund – that is, not a plan participant, beneficiary, or fiduciary as enumerated in 29 U.S.C. § 1132. *See* 700 F.2d 889, 892–93 (2d Cir. 1983). We further concluded that the district court properly denied the pension fund leave to substitute in the plan participants as plaintiffs. *Id.* at 893. To the extent that *Pressroom Unions-Printers* treated the plaintiffs' failure to state a claim under ERISA as a jurisdictional defect, that holding is inconsistent with the subsequent Supreme Court and circuit precedent discussed above. *See, e.g., Lexmark*, 572 U.S. at 128 n.4 ("[T]he absence of a valid . . . cause of action does not implicate subject-matter jurisdiction." (internal quotation marks omitted)); *Am. Psychiatric Ass'n*, 821 F.3d at 359 (explaining that ERISA "statutory standing" is non-jurisdictional). In any event, Karkare's complaint also pleaded federal-question jurisdiction under 28 U.S.C. § 1331, and we see no reason to doubt that the ERISA claim asserted here "arises under" federal law, since ERISA creates the section 502(a)(l)(B) private right of action and provides substantive rules of decision, and Congress has not otherwise divested federal courts of their adjudicatory authority. *See Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 378–79, 387 (2012).

[6] If on remand the complaint is amended to assert the ERISA claim on behalf of JN through Karkare as attorney-in-fact, the district court may have to determine, among other things, whether the power of attorney, which was not produced below, is in fact valid under New York law and whether it authorizes Karkare to bring this suit in Patient JN's name. Again, we leave it to the district court to decide these (and any other related) questions in the first instance.

15

## III. CONCLUSION

For the foregoing reasons, we **AFFIRM IN PART** and **VACATE IN PART** the judgment of the district court and **REMAND** the matter for further proceedings consistent with this opinion.